710 F.2d 940
 BRIDGE C.A.T. SCAN ASSOCIATES, on behalf of itself and all
other persons similarly situated, Plaintiff-Appellant,
v.
TECHNICARE CORPORATION and Johnson & Johnson, Inc.,
Defendants-Appellees,
and
Eimac Division of Varian Associates, Inc., Defendant.
 No. 1460, Docket 83-7291.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1983.
Decided June 20, 1983.
 
 Jeffrey H. Daichman, New York City (Thomas V. Marino, Grutman, Miller, Greenspoon & Hendler, New York City, on brief), for plaintiff-appellant.
 Eugene L. Girden, New York City (Karl E. Seib, Jr., Eugene M. Gelernter, Robert A. Crooks, Patterson, Belknap, Webb & Tyler, New York City, on brief), for defendants-appellees.
 Before MANSFIELD, MESKILL and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Bridge C.A.T. Scan Associates ("Bridge") appeals from an order dated April 11, 1983 ("April 11 Order"), entered in the United States District Court for the Eastern District of New York, Henry Bramwell, Judge, prohibiting Bridge from disclosing information contained in an exhibit to its amended complaint on the ground that the information consists of proprietary data and trade secrets (the "trade data") belonging to defendants Technicare Corporation and Johnson & Johnson, Inc. (collectively "Technicare"). Construing the prohibition as an injunction, Bridge challenges it in this appeal pursuant to 28 U.S.C. Sec. 1292(a)(1) (1976), on the ground that the order improperly abridges its rights under the First Amendment to the Constitution. Technicare, in addition to opposing Bridge's challenge on its merits, contends that the order is not appealable under Sec. 1292(a)(1). For the reasons below we treat the appeal from the prohibition on disclosure as a petition for a writ of mandamus and grant the writ.[1]
 
 I. BACKGROUND
 
 2
 The present action was commenced by Bridge on behalf of itself and others similarly situated as purchasers or lessees of computerized axial tomograph ("CAT") scanners designed and manufactured by Technicare. The amended complaint asserts claims of breach of contract, breach of warranty, and negligent design of various models of Technicare's CAT scanners. Exhibit "A" to the amended complaint purports to list Technicare's customers for CAT scanners, and to indicate the models of the machine acquired, the dates of installation, and the acquisition prices. The data in Exhibit A were collected by Bridge's counsel prior to the commencement of the action.
 
 
 3
 Technicare, taking the position that the information in Exhibit A is trade secret information which it has taken great pains to maintain as confidential, moved for a protective order, pursuant to the general equity jurisdiction of the district court, enjoining Bridge from using the trade data for any business or other purpose and from disclosing the data to any person not already a named party to the action, other than counsel for the parties who are working on the action. In support of its motion, Technicare stated that the parties had been in litigation in state court for several months over Bridge's failure to pay for the scanner it had purchased, and charged that the present action was a "spite suit" designed to cause unfavorable publicity, brought exactly as threatened by Bridge in an earlier letter to Technicare's top executive. (Transcript of hearing, March 25, 1983, at 5.) After hearing argument from both sides, the court entered a temporary restraining order on March 25, 1983, enjoining Bridge from disclosing the information in Exhibit A, pending an April 4, 1983 hearing on Technicare's motion for an injunction.
 
 
 4
 At the April 4 hearing, Technicare supplemented its earlier arguments to the court in support of a protective order, submitting to the court the Bridge letter adverted to on March 25 to support its contention that the present action is a spite suit, and suggesting that the information in Exhibit A had been obtained by Bridge from Technicare by improper means. It argued that dissemination of the data would irreparably injure it in terms of both its customer relations and its competitors' ability to tailor their sales propositions to Technicare's revealed pricing and lead times. Technicare requested discovery into Bridge's source for the Exhibit A data. Bridge opposed the injunction motion, arguing principally (1) that the trade data were not really secret since the names of Technicare's customers, the types of machines installed, and the dates of installation are available from publicly filed documents required by federal and state authorities, and pricing information is required by law to be publicly available; and (2) that because the information in Exhibit A had been compiled by Bridge's counsel prior to institution of the lawsuit and not as part of discovery proceedings in the lawsuit, the requested protective order would violate Bridge's First Amendment rights. Technicare argued that although various data might be gathered from a number of public sources, the convenient compilation in Exhibit A constituted a trade secret, and that trade secrets are a special category of information to which the First Amendment does not apply.
 
 
 5
 At the close of the April 4 hearing, the court orally granted Technicare's motion for an order prohibiting disclosure of the information in Exhibit A, relying on its authority under Fed.R.Civ.P. 26(c) to issue protective orders.[2] Although recognizing that "[t]he information was not obtained from defendants or any of its [sic ] agents within the context of pre-trial discovery," (Transcript of hearing, April 4, 1983 ("Tr."), at 42), the court concluded that it had authority under Rule 26(c)(7) to order the nondisclosure of Technicare's trade secrets. The court rejected Bridge's First Amendment argument on the ground that most of the authorities relied on by Bridge involved freedom of the press (id. at 45-47), and it construed International Products Corp. v. Koons, 325 F.2d 403 (2d Cir.1963), also relied on by Bridge, as holding "that a prior restraint on information in a case not involving journalists was perfectly appropriate and more importantly for our purposes today, Constitutional." (Tr. 46, emphasis therein.) The court instructed the parties to submit a proposed order in accordance with its rulings.
 
 
 6
 Following the district court's temporary restraining order on March 25, Bridge had petitioned this Court for a writ of mandamus vacating the temporary restraining order. After being advised of Judge Bramwell's oral ruling of April 4, a panel of this Court denied the mandamus petition, with the notation that "[i]f the parties consider Judge Bramwell's order to be in the nature of a preliminary injunction, they may file a notice of appeal." (Order dated April 6, 1983.)
 
 
 7
 Upon entry of the April 11 Order, which embodied the district court's April 4 rulings, Bridge instituted the present appeal.
 
 II. DISCUSSION
 A. Reviewability
 
 8
 As a general matter we have interpreted Sec. 1292(a)(1) to authorize an appeal only from an injunctive order that gives, or aids in giving, substantive relief sought in the lawsuit in order to preserve the status quo pending trial. See, e.g., Xerox Corp. v. SCM Corp., 534 F.2d 1031 (2d Cir.1976); International Products Corp. v. Koons, supra, 325 F.2d at 406-07, and cases cited therein; see generally 9 Moore's Federal Practice p 110.20, at 232-33 (2d ed. 1983). We have held nonappealable under Sec. 1292(a)(1) orders that were unrelated to the substantive issues of the litigation and that instead regulated, or purported to regulate, such matters as pretrial discovery and disclosure.
 
 
 9
 In Koons, we considered an appeal from an order prohibiting disclosure of (1) deposition testimony, (2) affidavits submitted on a motion to compel answers to deposition questions, and (3) documents marked as exhibits at the deposition. Although, as discussed in greater detail in Part B below, we viewed one part of the order as authorized by Fed.R.Civ.P. 30(b)--the forerunner of the present Rule 26(c)--another part as within the court's inherent equity powers, and the third part as entirely unauthorized, we found no part of the order appealable. 325 F.2d at 406-07.
 
 
 10
 We see no significant difference between the Koons order barring disclosure of the deposition exhibits and the April 11 Order in the present case. The April 11 Order did not purport to grant any of the relief sought in the action, nor to deal with any substantive issue in the case. Rather, invoking Rule 26(c), the court sought to regulate disclosures by Bridge during the course of the litigation. We conclude that the April 11 Order is not appealable.[3]
 
 
 11
 Nonetheless, here, as in Koons, "[i]t does not follow ... that an order purportedly made under [Rule 26(c) ] which exceeds the power there given to a district court is altogether beyond appellate scrutiny. The normal remedy for action taken in excess of jurisdiction is mandamus." 325 F.2d at 407. In Koons we did not treat the appeal as a petition for a writ of mandamus, preferring to recommend to the district court that it modify its order and noting that we would entertain a mandamus petition if the suggested modification were not forthcoming. Id. at 407-08. We have concluded that in the present case we should depart from our normal practice of declining to treat improvident appeals as petitions for mandamus.[4] We believe the departure warranted here because Bridge may have been confused by the mention of a possibility of appeal in the panel's ruling on Bridge's earlier petition for mandamus.[5] Accordingly, we treat the present appeal as a petition for a writ of mandamus vacating the district court's nondisclosure order.
 
 B. The Merits
 
 12
 It is beyond cavil that mandamus is an extraordinary writ, issued only in exceptional circumstances. It "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943) ); see In re International Business Machines Corp., 687 F.2d 591, 599 (2d Cir.1982). Entry of an order that would constitute a prior restraint on speech is an appropriate subject for a mandamus petition, e.g., Rodgers v. United States Steel Corp., 536 F.2d 1001 (3d Cir.1976); International Products Corp. v. Koons, supra, and since we conclude that the April 11 Order was beyond the court's authority, we conclude that the writ should issue.
 
 
 13
 The district court believed that it was empowered to enter its April 11 Order prohibiting plaintiff from disclosing the Exhibit A trade data by the authority granted under Fed.R.Civ.P. 26(c)(7). Notwithstanding that Technicare had sought to invoke the court's general equity powers, the court characterized Technicare's motion as one pursuant to Rule 26(c) (Tr. 41), quoted Rule 26(c) as the pertinent law (Tr. 42-43), and invoked "the authority vested in the Court, under Rule 26(c)(7)" (Tr. 47). Rule 26, however, which is entitled "General Provisions Governing Discovery," is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes. International Products Corp. v. Koons, supra; Rodgers v. United States Steel Corp., supra.
 
 
 14
 In Koons we considered an order of the district court that prohibited the defendants from disclosing, inter alia, certain deposition testimony and documents marked as exhibits at the deposition. We concluded that although the order barring disclosure of the deposition was authorized by then-Rule 30(b) [now Rule 26(c) ] the rules did not authorize the prohibition on the disclosure of the documents obtained prior to discovery:
 
 
 15
 The portion of the order which seals the deposition of Seldes and limits defendants and others in their use of information obtained therefrom was plainly authorized by F.R.Civ.Proc. 30(b), and we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes. Whether or not the Rule itself authorizes so much of the order as also seals all affidavits submitted by defendants on various motions, we have no question as to the court's jurisdiction to do this under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices," Gumbel v. Pitkin, 124 U.S. 131, 144, 8 S.Ct. 379 , 31 L.Ed. 374 (1888); Parker v. Columbia Broadcasting System, supra, 320 F.2d at 938, or as to the propriety of the exercise of discretion here. Even though the affidavits were defendants' own productions, their quasi-official appearance might give them more weight with the uninformed than they were entitled to receive, and newspapers might feel freer to publish them, under the privilege to report judicial proceedings, than extra-judicial statements.
 
 
 16
 What causes concern here is that the order went further and curtailed disclosure of information and writings which defendants and their counsel possessed before they sought to take Seldes' deposition. We fail to see how the use of such documents or information in arguing motions can justify an order preventing defendants and their counsel from exercising their First Amendment rights to disclose such documents and information free of governmental restraint.
 
 
 17
 325 F.2d at 407-08 (emphasis added). We concluded that the prohibition on disclosure of the prediscovery documents constituted a prior restraint on free speech and was not authorized by the discovery rules.
 
 
 18
 In the present case, since Exhibit A and the data it contained were not information obtained by means of discovery but had been compiled by Bridge's counsel prior to commencing the lawsuit, Rule 26(c) did not give the court authority to prohibit disclosure of the trade data.
 
 
 19
 In Koons we also ruled that the provision barring the disclosure of documents acquired prior to discovery was not within the court's inherent power to prevent abuses and injustice. Although we found this inherent power sufficient to authorize an order sealing affidavits used in arguing a discovery motion, on the ground that the quasi-official appearance of an affidavit might result in the affidavit's being given unwarranted weight and publication, we found no such power with respect to the documents possessed by the defendants prior to the deposition, in light of the defendants' First Amendment rights to give vent to their views. Accordingly, we recommended that the district court modify its order of nondisclosure to exclude the documents, and we indicated that in the absence of such a modification, a mandamus petition would be viewed favorably.
 
 
 20
 In Parker v. Columbia Broadcasting System, 320 F.2d 937 (2d Cir.), petition for writ of mandamus denied, 375 U.S. 900, 84 S.Ct. 13, 11 L.Ed.2d 157 (1963), we similarly recognized the district court's inherent power to enjoin the plaintiff from disclosing to others a memorandum she had filed with the court. Id. at 938. But we ruled that the court could not, consistent with the plaintiff's First Amendment rights or with historic principles of equity, enjoin her from disclosing the information contained in the memorandum. Id. at 939.
 
 
 21
 The principles to be gleaned from Koons and Parker pertinent to the merits of this appeal are that the court has inherent equitable power to prohibit a party from abusing the judicial process by disseminating information or representations clothed in an official-looking document on file with the court; but, in light of First Amendment considerations, the court generally has no such power to prohibit dissemination of the information itself, stripped of its judicial garb, if that information has been gathered independently of judicial processes. In the present case, since the information reflected in Exhibit A was gained by Bridge independently of any judicial processes, and since Exhibit A carries no appearance of an official court document, the court's nondisclosure order infringed Bridge's First Amendment rights and was contrary to historic principles of equity.
 
 
 22
 The district court's rejection of Bridge's First Amendment contention rested on the observation that this case does not involve considerations of journalism. This, however, was too restrictive a view of the First Amendment, which, in addition to freedom of the press, also guarantees freedom of speech. The district court correctly recognized that Koons, like the present case, did not involve freedom of the press; but it failed to note that Koons held squarely that the prior restraint on the defendants' First Amendment right to disseminate documents obtained outside the discovery process was beyond the court's power.
 
 
 23
 The fact that the order at issue here involves trade secrets does not diminish the precedential effect of Koons in the present posture of this case. It is of course true that in appropriate circumstances a person may, by invoking the court's equity powers, obtain an injunction against use or disclosure of his trade secrets, as where a party has obtained them by breaching its confidential relationship with the owner, see Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974), or by procuring another to breach a confidential relationship with the owner, see A.H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 15-17 (2d Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968), or perhaps where a party has obtained them innocently but has thereafter learned of their misappropriation, see Conmar Products Corp. v. Universal Slide Fastener Co., 172 F.2d 150, 156 (2d Cir.1949). But see New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (strong tradition under First Amendment allows disclosure of improperly obtained information in the public interest unless sufficient countervailing circumstances are found); see also Conmar Products Corp. v. Universal Slide Fastener Co., supra (suggesting that use of wrongfully acquired information will not be enjoined if information becomes publicly available).
 
 
 24
 The district court in the present case, however, was in no position to grant an injunction against disclosure of the trade data pursuant to its equity powers, for the evidence before it could not justify the granting of such relief. Preliminarily we note that Technicare had not filed a counterclaim against Bridge for misappropriation of information, so any issue as to trade secrets was completely collateral to the underlying dispute, and the court had no basis for granting such relief as an incident to any rights asserted in the action. Further, although Technicare suggested obliquely at oral argument on April 4 that Bridge's possession of the trade data was wrongful, it presented no evidence that Bridge had come by the information by other than legitimate means.[6] At oral argument of this appeal, Bridge's counsel stated that counsel had obtained the information from a person who, although an ex-employee of Technicare, had been given the information by Technicare after termination of his employment, with no promises exacted as to confidentiality, because he was a potential customer for Technicare's CAT scanners. Technicare's counsel, on the other hand, stated that although Bridge had purported to reveal in response to interrogatories the source of its information, the person identified had denied, on deposition, that he was the source.
 
 
 25
 The record before the district court when it made its ruling was quite undeveloped. No discovery had been conducted, and no evidence was presented as to any culpability on Bridge's part in the acquisition of the information. The court was poorly situated to make any findings as to misappropriation by any person, or as to Bridge's knowledge if a misappropriation had occurred; and it appears to have had incomplete data before it as to the public availability of the information in Exhibit A. These are among the appropriate matters for the court's consideration if Technicare should file an appropriate counterclaim against Bridge and move for a preliminary injunction. On the present record, however, the district court could not properly enjoin disclosure of the trade data.
 
 
 26
 While our control over our judgment continues until our mandate issues, Alphin v. Henson, 552 F.2d 1033, 1035 (4th Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977), nothing precludes the district court from considering injunctive relief pending issuance of our mandate. Our decision relates only to the record and issues presented to us, and does not purport to deal with evidence not before us. Cf. Standard Oil Co. of California v. United States, 429 U.S. 17, 18, 97 S.Ct. 31, 32, 50 L.Ed.2d 21 (1976) (per curiam) (district court may take appropriate action on a Rule 60(b) motion without leave of appellate court). Hence, the district court would in no sense be 'flouting' our decision, see Standard Oil, supra, if it should decide, pending a hearing on an application by Technicare for such preliminary injunctive relief, to grant a TRO based on evidence of possible misconduct relating to the misappropriation of trade secret information. See, e.g., A.H. Emery Co. v. Marcan Products Corp., supra; Conmar Products Corp. v. Universal Slide Fastener Co., supra. The court may, in its discretion, provide that such a TRO is to take effect upon the issuance of our mandate.
 
 CONCLUSION
 
 27
 For the above reasons we grant the writ of mandamus, vacate the April 11 Order, and remand for further proceedings not inconsistent with this opinion. For the sake of clarity we remind Bridge that the April 11 Order remains in effect until issuance of this Court's mandate which, pursuant to Fed.R.App.P. 41(a), will occur 21 days after entry of our judgment herein.
 
 
 
 [1]
 Bridge initially appealed also from that part of the April 11 Order which required it to submit to immediate discovery with respect to the source from which it had obtained the trade data. It has since answered interrogatories on that subject, and that portion of its appeal is thus moot. We nevertheless note that that portion of the court's order was not appealable and would have been an unworthy subject for a mandamus petition
 
 
 [2]
 Fed.R.Civ.P. 26(c) provides, in pertinent part, as follows:
 (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;....
 
 
 [3]
 Although in Parker v. Columbia Broadcasting System, 320 F.2d 937 (2d Cir.), petition for writ of mandamus denied, 375 U.S. 900, 84 S.Ct. 213, 11 L.Ed.2d 157 (1963), this Court entertained an appeal from a nondisclosure order purportedly entered on the basis of the court's inherent power, we agree with the Koons panel that it would have been more appropriate to have treated the appeal in Parker as a petition for mandamus. See Koons, supra, 325 F.2d at 407 n. 4
 
 
 [4]
 Other courts apparently have been more willing than we to grant such treatment. See id. at 407; 9 Moore's Federal Practice, supra, p 110.28, at 315-16 ("courts of appeals can, and frequently do, treat a notice of appeal as a petition for mandamus if the order sought to be reviewed is non-appealable but the question presented is subject to review by mandamus")
 
 
 [5]
 We infer that the prior panel, which had been presented with a petition seeking vacation of a temporary restraining order, meant only to suggest that its denial of that petition was without prejudice to Bridge's seeking review of the order that superseded the TRO
 
 
 [6]
 Technicare stated that Exhibit A contained "information that we believe came from Technicare" (Tr. 11), and by innuendo suggested that Bridge had obtained it improperly--analogizing to someone's "steal[ing] a knickknack off the President's desk" (id. at 15), and to "a litigant who got something improperly" (id. at 16). So far as we are aware, there was no direct assertion that Bridge had purloined the information or caused it to be misappropriated