**REBEL OIL COMPANY, INC., and Auto Flite Oil Company, Inc., Plaintiffs,**

v.

**ATLANTIC RICHFIELD COMPANY, Defendant.**

No. CV–S–90–076–PMP (RJJ).

United States District Court, D. Nevada.

Oct. 1, 1990.

**42**

William H. Bode, William Bode & Associates, Washington, D.C., Donald J. Campbell, Las Vegas, Nev., for plaintiffs.

Donald C. Smaltz, Morgan, Lewis & Bockuis, Los Angeles, Cal., Thomas F. Kummer, Vargas & Bartlett, Las Vegas, Nev., for defendant.

## ORDER LIMITING DISCOVERY

PRO, District Judge.

The Amended Complaint (# 9), filed March 27, 1990, on behalf of Plaintiff Rebel Oil Company, Inc., and Auto Flite Oil Company, Inc. (hereinafter "REBEL") alleges three claims for relief against Defendant Atlantic Richfield Company (hereinafter "ARCO").

REBEL brings this action under Section 4 of the Clayton Act seeking treble damages of at least $10,000,000 under three causes of action: Count I—illegal price discrimination under the Robinson–Patman Act, 15 U.S.C. § 13(a); Count II—illegal price-fixing conspiracy under Section 1 of the Sherman Act, 15 U.S.C. § 1; and Count III—illegal attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2.

REBEL essentially claims that beginning in 1982, ARCO began executing a plan to monopolize the Las Vegas retail discount gasoline market and thereby destroy effective competition from discount marketers like REBEL. REBEL alleges that ARCO schemed to lower its wholesale price of gasoline in Las Vegas below its cost and below its comparable prices in Los Angeles, despite the higher costs of transporting gasoline 250 miles by pipeline from Los Angeles to Las Vegas. REBEL further alleges that ARCO conspired with and coerced its independent dealers to fix the ARCO pump prices at correspondingly below-cost, predatory levels. As a result, alleges REBEL, ARCO's share at the Las Vegas discount gasoline market went from zero to at least an estimated 65% to 80% in less than five years. REBEL alleges that every significant independent discount gasoline marketer in Las Vegas, except REBEL, was put out of business by ARCO's predation.

Extensive discovery requests have been propounded by both parties, and to date, REBEL has produced voluminous documents for inspection by ARCO.

Before the Court for consideration are Defendant ARCO's Motion for a Protective Order Limiting the Scope of Plaintiffs' Discovery (# 24), filed May 29, 1990, and Plaintiffs' Cross–Motion to Compel Discovery from Defendant and for the Entry of a New Scheduling Order (# 26), filed June 13, 1990.

By its Motion for Protective Order, ARCO asks the Court to limit the scope of Plaintiffs' discovery at the outset of this case to the threshold issue which ARCO contends may dispose of the entire action: whether significant entry barriers exist in the Las Vegas gasoline market. ARCO maintains that if REBEL is unable to meet the initial burden of showing that entry barriers exist, all other discovery sought by REBEL would be irrelevant and REBEL's challenge directed to ARCO's low price marketing strategy would fail.

REBEL responds that ARCO's Motion for Protective Order amounts to an effort to block virtually all of the discovery which has been served on it in this action and amounts to an effort to "repeal discovery rules and rewrite antitrust law for this case."

■ Clearly the Federal Rules of Civil Procedure empower a district court to control the timing and order of discovery. Rule 26(c) provides in pertinent part that a district court "may make any order which justice requires to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] ... (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters." Rule 26(d) allows the Court to issue an Order to control the sequence and timing of discovery "upon motion, for the convenience of the parties and witnesses and in the interests of justice." Rule 26 is a grant of power to impose conditions on discovery in order to prevent abuse of the court's processes, among other things. *Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940 (2nd Cir.1983). Where appropriate, a district court may limit a party's discovery as long as the party is able to develop fully its case. *Mid–South Grizzlies v. Nat'l Football League*, 550 F.Supp. 558 (E.D.Pa.1982), *aff'd* 720 F.2d 772 (3d Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).

Whether the Court should exercise its authority to limit the timing and order of discovery as proposed by ARCO turns upon an application of principles of antitrust law to the allegations contained in REBEL's Amended Complaint.

### The Requirement of "Antitrust Injury"

Section 4 of the Clayton Act, 15 U.S.C. sec. 15, furnishes the jurisdictional basis for all three private-party antitrust claims advanced in REBEL's Amended Complaint. That statute provides, *inter alia,* that "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States...." 15 U.S.C. § 15(a). It also provides for treble damages and attorneys fees, creating incentives for private attorneys general. *Id.*

■ The Supreme Court has repeatedly held that a private party bringing an antitrust suit under Section 4 of the Clayton Act must prove[1] "antitrust injury." *See, e.g., ARCO v. USA Petroleum Co.,* — U.S. —, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). A plaintiff can show antitrust injury by demonstrating that it suffered an injury that (1) is "of the type the antitrust laws were intended to prevent" and (2) "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Recent Supreme Court cases make it clear that the antitrust injury requirement cannot be satisfied without a showing of predatory pricing. *ARCO v. USA Petroleum Co.,* — U.S. —, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). The clarity with which this standard can be stated is misleading, however, because the concept of predation defies simple definition. The most commonly accepted indicia of predatory pricing is pricing below cost. What constitutes pricing "below cost" can in itself be a slippery concept. Most courts have adopted a modified Areeda–Turner test at least for the purposes of evaluating Sherman Act cases. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585, n. 8, 106 S.Ct. 1348, 1355, n. 8, 89 L.Ed.2d 538 (1986); *Transamerica Computer Co. v. IBM,* 698 F.2d 1377, 1386 (9th Cir.1983); *ITT Continental Baking Co.,* 3 Trade Reg. Rep. ¶ 22,188 (FTC 1984). Under the Areeda–Turner test, a monopolist, or one with market power, who prices below marginal cost is presumed to engage in predatory pricing.[2]

### Proof of Market Power

■ Explicit in the Areeda–Turner predation test is a requirement that the plaintiff show the defendant to be a monopolist

---

**1.** *See infra,* pp. 44–45.

**2.** Most courts have rejected the hard-to-calculate marginal cost standard and have replaced it with a calculation of reasonably anticipated average variable cost. *See, e.g., Transamerica Computer Co. v. IBM,* 698 F.2d at 1386. The Federal Trade Commission has held that there is a presumption of legality if defendant's prices are above average variable costs. This presumption becomes conclusive if the prices exceed average total costs. *ITT Continental Baking Co.,* 3 Trade Reg.Rep. ¶ 22,188 (FTC 1984). The FTC and others urge capital, executive, and administrative costs, sales expenses, and some elements of promotional expense to be included in the average variable cost computation. Areeda and Turner include only capital costs in their computation.

or one with "market power." Market power exists when (1) a firm has a substantial market share and (2) there are entry barriers in a relevant market. *California v. American Stores*, 872 F.2d 837 (9th Cir. 1989), *rev'd on other grounds*, — U.S. ——, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990); *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 363 (9th Cir. 1988), *cert. denied*, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149. Entry barriers are important to the extent that they indicate a company's ability to control prices or exclude competition in the relevant market. *Oahu Gas*, 838 F.2d at 366. The justification behind the entry barriers requirement is that if it is relatively easy for new firms to enter the market, a monopolist will not be able to raise its prices above a competitive level without thereby inviting new competition.

The Supreme Court has recently clarified that even when elements of the substantive antitrust laws are satisfied, a private plaintiff must still satisfy the Clayton Act section 4 requirement of antitrust injury. *ARCO v. USA Petroleum Co.*, — U.S. at ——, 110 S.Ct. at 1891. For instance, in *USA Petroleum*, although plaintiffs had demonstrated a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, they had failed to prove the existence of predatory behavior. In the absence of such proof, summary judgment against them was proper. *Id.*

The Supreme Court explicitly adopted a requirement that all private antitrust plaintiffs demonstrate the existence of predatory behavior in the *USA Petroleum* decision. *Id.* The implicit message in the Supreme Court's decision is that all private antitrust plaintiffs must now demonstrate that defendants have market power. This demonstration entails showing that defendants have a substantial share of the relevant market and that there are entry barriers to that market. After market power is demonstrated, private antitrust plaintiffs must demonstrate the other aspect of predation: pricing below cost.

### Standards for Adequacy of Demonstration

What constitutes an "adequate showing" regarding entry barriers in a relevant market is a difficult issue. The Ninth Circuit has established that both market definition and market power are essentially questions of fact appropriate for jury consideration. *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 363 (9th Cir. 1988); *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1299 (9th Cir.1982), *cert. denied*, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Greyhound Computer Corp. v. International Business Machines Corp.*, 559 F.2d 488, 496–97 (9th Cir.1977), *cert. denied*, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). Traditionally, questions of market definition and market power have been raised only in the context of substantive antitrust statutes such as Section 2 of the Sherman Act.

The Supreme Court has supplied the "antitrust injury" requirement of Section 4 of the Clayton Act. *ARCO v. USA Petroleum*, — U.S. ——, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). In its interpretation of Section 4 in the context of *USA Petroleum*, the Supreme Court does not clarify whether the "antitrust injury" requirement must be proven as a jurisdictional matter [3] to be decided by the trial court or whether

---

**3.** At one point, the Court refers to *Cargill, Inc. v. Monfort of Colorado, Inc.*, stating that "we found that a plaintiff competitor had not shown antitrust injury and thus could not challenge a merger that was assumed to be illegal under § 7 of the Clayton Act ..." *USA Petroleum*, — U.S. at ——, 110 S.Ct. at 1892. Later in that decision, the Court declares, "[W]e have previously recognized that even in cases involving *per se* violations, the right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered antitrust injury." *Id.* at ——, 110 S.Ct. at 1894 (emphasis in the original). A third time when the Court implies that the antitrust injury must be shown as a jurisdictional concern is where the Court states that it declines to dilute the antitrust injury requirement against vertical, maximum price-fixing schemes, "[i]f such a scheme causes the anticompetitive consequences detailed in *Albrecht*, consumers and the manufacturers' own

it must be proven during the trial before a jury awards damages.[4]

Obviously, some of the language which supports the interpretation that "antitrust injury" is a requirement to be satisfied before damages are awarded also supports the interpretation that it is a jurisdictional concern: it is axiomatic that if a suit is not allowed to go forward for lack of jurisdiction then the plaintiff will not collect any damages.

### A Bifurcated Approach to Discovery

 Proving that a defendant has engaged in pricing below cost entails extensive discovery regarding virtually all aspects of a company's business. On the other hand, discovery into relevant markets and entry barriers is a more discrete undertaking. Since under the recent Supreme Court's holding private antitrust plaintiffs such as REBEL must prove the existence of entry barriers and relevant markets, it makes sense for this Court to initially restrict discovery to those topics.

This bifurcated method of conducting discovery includes adequate safeguards to protect the rights of both REBEL and ARCO while greatly streamlining and potentially reducing to cost of the litigation. Burdensome discovery will be eliminated for those cases in which plaintiffs would have no chance of ultimately prevailing.

### Conclusion

In focusing on the legitimate needs of the parties to this action for discovery, and in balancing the relative hardships faced by ARCO if the unlimited discovery sought by REBEL is granted as compared to the hardship faced by REBEL if discovery is limited, the Court concludes ARCO's Motion for Protective Order should be granted. ARCO would endure great hardship and expense if it had to comply at this time with the sweeping discovery requests made by REBEL. ARCO would have to present virtually every document in its possession or control regarding its operations in Los Angeles and Las Vegas, including among other things those concerning such broad categories of activity as production, transportation and refinement of petroleum products. Additionally, officers and employees of ARCO would be subjected to depositions in these same subject areas. Yet, for the reasons stated above, most of the discovery sought by REBEL from ARCO would prove to be unnecessary unless REBEL can make an adequate showing of market definition and the existence of entry barriers into the Las Vegas retail gasoline market.

IT IS THEREFORE ORDERED that ARCO's Motion for Protective Order Limiting the Scope of Plaintiffs' Discovery (# 24) is granted to the extent that REBEL's discovery of ARCO shall, until further Order of the Court, be limited to the issues of ARCO's share of the relevant retail gasoline market in Las Vegas and to the issue of whether entry barriers exist with respect to that market.

IT IS FURTHER ORDERED that REBEL's Cross–Motion to Compel (# 26) is denied.

---

dealers may bring suit." *Id., referring to Albrecht v. Herald Co.,* 390 U.S. 145, 159, 88 S.Ct. 869, 876, 19 L.Ed.2d 998 (1968), *reh'g denied,* 390 U.S. 1018, 88 S.Ct. 1258, 20 L.Ed.2d 169. Finally, the Court declares that since "[r]espondent's injury ... is not 'inextricably intertwined' with the antitrust injury that a dealer would suffer," it "does not militate in favor of permitting respondent to sue on behalf of petitioner's dealers." *Id.,* —— U.S. at ———— ——, 110 S.Ct. at 1894–1895, *quoting Blue Shield of Virginia v. McCready,* 457 U.S. 465, 484, 102 S.Ct. 2540, 2551, 73 L.Ed.2d 149 (1982).

**4.** "A private plaintiff may not recover damages under § 4 of the Clayton Act merely by showing 'injury causally linked to an illegal presence in the market.'" *ARCO v. USA Petroleum,* —— U.S. at ——, 110 S.Ct. at 1889, *quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Likewise, the Court declares, "The *per se* rule is a method of determining whether § 1 of the Sherman Act has been violated, but it does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages under § 4 of the Clayton Act." *Id.* —— U.S. at ——, 110 S.Ct. at 1893. Furthermore, "[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from an competition-reducing aspect of effect of the defendant's behavior." *Id.* at ——, 110 S.Ct. at 1894 (emphasis deleted).