**REBEL OIL COMPANY, INC., and Auto Flite Oil Company, Inc., Plaintiffs,**

v.

**ATLANTIC RICHFIELD COMPANY, Defendant.**

**No. CV–S–90–76–PMP (RLH).**

United States District Court, D. Nevada.

Oct. 15, 1992.

William H. Bode, John M. Mason, Robert A. Jaffee, William H. Bode & Associates, Washington, DC, Donald J. Campbell, John D. O'Brien, Las Vegas, NV, for plaintiffs.

Donald C. Smaltz, Leighton M. Anderson, Smaltz & Anderson, Los Angeles, CA, Thomas F. Kummer, Vargas & Bartlett, Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

Before the Court for consideration are cross-motions for partial summary judgment filed on behalf of Defendant ARCO (# 273) and Plaintiff Rebel (# 360). The motions have been exhaustively briefed and the subject of oral argument conducted on Friday, October 9, 1992.

Rebel's Second Amended Complaint (# 92) includes three causes of action under Section 4 of the Clayton Act: Count 1—unlawful price discrimination under the Robinson–Patman Act, 15 U.S.C. § 13(a); Count 6—price-fixing conspiracy under Section 1 of the Sherman Act, 15 U.S.C. § 1; and Count 7—attempt to monopolize under Section 2 of the Sherman Act, 15 U.S.C. § 2.

ARCO seeks partial summary judgment against Rebel as to Rebel's antitrust claims. ARCO also seeks summary judgment as to Count 8 of Rebel's Second Amended Complaint which alleges unfair trade practices in violation of Nevada Revised Statute 598A.060, as that cause of action is based on the allegations supporting Rebel's federal antitrust claims. Rebel opposes ARCO's motion for partial summary judgment and in its countermotion seeks partial summary judgment on the issue of ARCO's market power.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless

there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555, *quoting* Fed.R.Civ.P. 1. *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## DISCUSSION

The Supreme Court has repeatedly held that for a private party to recover under the Clayton Act the party must show it has suffered "antitrust injury." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109, 107 S.Ct. 484, 488–89, 93 L.Ed.2d 427 (1986); *ARCO v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). This Court has already found that in this case a showing of "antitrust injury" must include a demonstration of "market power" by ARCO. *Rebel Oil., Inc. v. Atlantic Richfield Co.*, 133 F.R.D. 41, 44 (D.Nev.1990).

In order to show that ARCO has market power, Rebel must demonstrate that ARCO (1) has a substantial market share and (2) there are entry barriers in the relevant market. *Id.* Without a showing by Rebel that ARCO possesses substantial market share, there is no market power and no antitrust injury to support Rebel's Section 4 antitrust claims against ARCO. Rebel has the burden of proving the scope of the relevant market. *DeVoto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340, 1344 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980) (citing *Bhan v. NME Hospitals, Inc.*, 669 F.Supp. 998, 1019 (E.D.Cal.1987)).

■ In determining the relevant product market, the Court must consider the rule of reasonable interchangeability. *Brown v. Shoe Co.*, 370 U.S. 294, 325, 82 S.Ct. 1502, 1524, 8 L.Ed.2d 510 (1962); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007–08, 100 L.Ed. 1264 (1956); *Twin City Sportservice., Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1271 (9th Cir.1975), *cert. denied*, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982). "That is, where there is a high degree of substitutability in the use of two commodities, it may be said that the cross-elasticity of demand between them is relatively high, and therefore the two should be considered in the same market." 512 F.2d at 1271. The same analysis applies whether the market is viewed from

the consumption standpoint or the production standpoint. *Id.*

Generally, a market includes "products regarded by consumers as such close substitutes that a slight relative price change in one will induce intolerable shifts of demand away from the other." Areeda & Turner vol. II, § 525a. (1978). For example, if consumers view products "A" and "B" as close substitutes, an increase in the price of product "A" will surely drive some of those consumers to switch to product "B". Therefore, the price of product "A" is significantly constrained by the presence of product "B" in the marketplace.

■ Rebel defines the relevant product market in this case as consisting of "all retail sales of gasoline, excluding sales with a substantial service component such as credit or full service," in Las Vegas. Affidavit of Prof. Leffler, ¶ 8, Affidavit of Prof. Allvine ¶ 2, Rebel's Motion for Partial Summary Judgment on Market Power (# 360) at 14.

ARCO disputes Rebel's definition of the relevant market and asks the Court to adopt a broader definition which would include all retail sales of gasoline in Las Vegas regardless of whether credit or attendant services are offered.

In essence, Rebel claims that there are two distinct, economically relevant product markets for the retail sales of gasoline in Las Vegas: (1) self-serve, cash-only sales of retail gasoline, and (2) full-serve, credit sales of retail gasoline. ARCO argues that there are no such independent markets within the Las Vegas retail gasoline market.

Both parties agree that in defining the relevant product market, consumer preference is the important factor. Declaration of Prof. John R. Umbeck, ¶ 126, Supp. Affidavit of Professor Keith Leffler ¶ 8.

Rebel claims that there is an independent market for self-serve, cash-only gasoline based on consumer preference:

ARCO markets gasoline based solely on price, offering cash only self-service. Some consumers, however, make their gasoline purchases based on the availability of attendant assistance; others purchase only where credit cards can be used; and, some consumers buy particular brands of gasoline due to perceived (and advertised) product differences. These consumers will not consider ARCO to be in competition with those stations offering these services. Hence, their purchases of gasoline with tied-in services are properly excluded in estimating Arco's economic significance to price sensitive gasoline purchasers.

Affidavit of Prof. Leffler at ¶ 8.

ARCO argues that there is not a separate market for cash-only, self-serve gasoline because the prices between the products (self-serve, cash-only as opposed to full-serve, credit gasoline) are highly correlated and thus viewed by consumers as practically identical: "In other words, if the movement of the prices of two products is highly correlated (that is, the prices move together), the goods are close substitutes and should be considered the same." Decl. Prof. Umbeck ¶ 130–133.

Rebel claims that the price and percentage of price differentials between the two alleged markets demonstrates a low price correlation which would require the finding of an independent market for self-serve, cash only sales of gasoline:

Based on the data presented by Prof. Umbeck (Umbeck Figure 13) the price differential between gasoline sold in the two markets, far from remaining constant, varies from 21 cents to 53 cents per gallon and the percentage difference in the prices varies from 16% to 71%, as shown in Exhibits H and I, attached hereto. This price and percentage variations demonstrate a low correlation in prices between the two markets.

Supp. Affidavit of Prof. Allvine at ¶ 15:

The Court finds the arguments advanced by ARCO to be more persuasive than those proposed by Rebel. If prices between competing products, such as gasoline, are highly correlated, then those products belong in the same market. Areeda & Turner ¶ 525.-1c. (1990 Supplement).

Rebel's contention that price differentials between two products demonstrates a low

correlation of prices between those two products is erroneous. "Correlation" refers to the amount of change in a price differential over a specific time period. Decl. Prof. Umbeck at ¶ 128, 129. Therefore, prices between competing products are highly correlated because they move together (when the price of product "A" increases or decreases, so does the price of product "B" and vice versa), and not because prices between those products differentiate.

From 1986, the first year for which Rebel could recover damages under the four-year limitation period of 15 U.S.C. § 15(b), until the present, the price differential between self-serve, cash-only gasoline and full-serve, credit gasoline has remained constant, at approximately 45 cents. See Figure 13, attached to Decl. of Prof. Umbeck, Supp. Affidavit, Prof. Allvine, Exhibits H and I. Such constancy supports this Court's finding that prices between self-serve, cash only gasoline and full-serve, credit gasoline are highly correlated and belong in the same market.

Additionally, the fact that one product is priced lower than other competing products does not require the former product to be placed in a separate market. Competing products are not in different markets simply because of the presence of price differentials. 512 F.2d at 1274. *See also E.I. du Pont de Nemours & Co.*, 351 U.S. at 401, 76 S.Ct. at 1010 (where the Supreme Court refused to place cellophane outside the flexible wrapping market even though it cost two to three times more than competing products).

Under the general principles of market definition enunciated above by the Supreme Court and the Ninth Circuit, the relevant product market must include all retail suppliers of gasoline. The fact that consumers choose one brand of gasoline over another because of service, quality, credit or price considerations does not lead to the conclusion that low price gasoline should be placed in a separate market. To the contrary, the fact that buyers will shift to other brands of gasoline if ARCO resorts to ultra-competitive pricing means that the

relevant product market must include all retail supplies of gasoline in Las Vegas. Therefore, the Court concludes that the relevant product market in this case is all retail suppliers of gasoline in Las Vegas and not only those retailers who choose to sell their gasoline at a lower price by excluding other services.

Rebel argues that ARCO's share of the self-serve, cash-only market was 54.32% in 1991. Rebel's Motion for Partial Summary Judgment on Market Power, Exhibit I. This Court's definition of the relevant market makes it unnecessary to determine whether this 54.32% showing is sufficient to constitute a monopoly.

■ Rebel alternatively argues that ARCO possesses 44% of all retail sales of gasoline in Las Vegas, including those sales which offer credit or attendant services. Supp. Affidavit of Prof. Leffler at ¶ 16, Supp. Affidavit of Prof. Allvine at ¶ 9, Supp. Affidavit of Prof. Carroll, Table A. The record before the Court simply does not support Rebel's claim regarding ARCO's market share. Nonetheless, this Court finds Rebel's attempt to demonstrate that ARCO can exercise monopolistic pricing with a showing of 44% to be unpersuasive. This Court notes Judge Learned Hand's often-quoted dictum that while 90% of the market "is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three percent is not." *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2nd Cir.1945) (quoted in *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1274 (9th Cir.1975)). This Court also recognizes the numerous cases finding that a 50% share of the market is inadequate to establish a monopoly. *See cases compiled in Twin City Sportservice*, 512 F.2d at 1274.

In addition to finding that Rebel has failed to demonstrate a genuine issue of material fact as to whether ARCO has a substantial market share, the Court also finds that Rebel has failed to demonstrate that there exist barriers to entry into the retail gasoline market in Las Vegas by

other retail gasoline dealers. Indeed, the record in this case reflects relatively dynamic changes in the makeup of retail gasoline providers in Las Vegas. Therefore, this Court finds that Rebel has not shown that ARCO possesses market power within the relevant market of all retail suppliers of gasoline in Las Vegas. For this reason, ARCO's Motion for Summary Judgment must be granted and Rebel's Motion for Summary Judgment denied.

## CONCLUSION

Defendant ARCO has demonstrated that there are no genuine issues of material fact with regard to market power. Plaintiff Rebel cannot, therefore, prevail on any of its antitrust claims brought pursuant to Section 4 of the Clayton Act or its unfair trade practices claim brought pursuant to Nevada Revised Statute 598A.060. Accordingly, the Court will enter Judgment in favor of Defendant ARCO and against Plaintiff Rebel as to each of Rebel's claims brought in Counts 1, 6, 7 and 8.

## ORDER

IT IS THEREFORE ORDERED that Rebel's Motion for Partial Summary Judgment on Market Power (# 360) is hereby denied.

IT IS FURTHER ORDERED that ARCO's Motion for Summary Judgment (# 273) is granted.

IT IS FURTHER ORDERED that the Clerk of Court shall forthwith enter Judgment in favor of Defendant ARCO and against Plaintiff Rebel as to Rebel's antitrust and unfair trade practices claims set forth in Counts 1, 6, 7 and 8 of Plaintiff's Second Amended Complaint (# 92).