**A.F.A. TOURS, INC., doing business as Alumni Flights Abroad, Plaintiff–Appellant,**

v.

**Desmond WHITCHURCH, Defendant–Appellee.**

**No. 1411, Docket 90–9085.**

United States Court of Appeals, Second Circuit.

Argued April 22, 1991.

Decided June 28, 1991.

**84**

Alan M. Dubow, White Plains, N.Y. (Bruce Minkoff, Robinowitz Cohlan & Dubow, White Plains, N.Y., on the brief), for plaintiff-appellant.

Larry H. Krantz, New York City (Ronald W. Meister, Meister Leventhal & Slade, New York City, George Forman, Alexander & Karshmer, Berkeley, Cal., on brief), for defendant-appellee.

Before NEWMAN and KEARSE, Circuit Judges, and STANTON, District Judge.*

KEARSE, Circuit Judge:

Plaintiff A.F.A. Tours, Inc., doing business as Alumni Flights Abroad ("AFA"), appeals from a final judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge*, dismissing for lack of subject matter jurisdiction this diversity action against defendant Desmond Whitchurch for misappropriation of trade secrets. The district court summarily dismissed the complaint on the ground that it would not be possible for AFA to prove damages amounting to more than $50,000. For the reasons below, we vacate and remand for further proceedings.

## I. BACKGROUND

According to the complaint, AFA operates a travel and tour business, specializing in deluxe tours for United States residents to overseas destinations including Australia, New Zealand, and New Guinea. It expended large sums of money and invested significant time and labor to develop, *inter alia,* a client and customer list, marketing information, and tour information. It regarded this information as confidential trade secrets.

From 1972 through 1989, Whitchurch was employed by AFA as its exclusive tour escort in the above areas. In that position, Whitchurch was privy to certain of the above confidential information. The complaint alleged that in or about October 1989, Whitchurch resigned from AFA, misappropriated the confidential information known to him, and organized his own tour business. Since that time, he has offered or intends to offer tours that compete with those offered by AFA; in connection with his own tours, he has solicited or intends to solicit participants from AFA's customer list.

AFA commenced the present diversity action in the district court for misappropriation of its trade secrets, seeking an injunction against any use by Whitchurch of confidential AFA information, and damages "in an amount which is not presently ascertainable, but which is believed to exceed the sum of $50,000.00." It also sought punitive damages of "no less than $250,-000.00."

Whitchurch denied all of the material allegations of the complaint and quickly moved for summary judgment on the ground that the AFA information possessed by Whitchurch was not confidential. Whitchurch's supporting affidavits stated, *inter alia,* that, though Whitchurch had led an average of seven AFA tours per year for 17 years, he had had no written contract with AFA. He stated that AFA had never informed him that the customer names were confidential, or should not be

York, sitting by designation.

shared with others, or should be returned to AFA upon Whitchurch's resignation. Rather, he stated, AFA had freely disseminated lists of the names and addresses of its customers to "countless individuals and entities," including hotels, booking and travel agents, and the tour participants themselves.

Whitchurch stated that from February to May 1990, he had attempted to organize a tour on his own. In this effort he had, *inter alia*, written to former AFA tour participants he had escorted, informed them of his separation from AFA, and solicited their participation. Only two people reserved space on the planned tour, however, and it was canceled. He opposed the present lawsuit because he remained interested in conducting tours in the future.

AFA opposed Whitchurch's summary judgment motion, contending that there were genuine issues of fact as to, *inter alia*, the confidential nature of the AFA information and Whitchurch's knowledge of that confidentiality. It submitted affidavits describing its own operations and detailing steps it had taken to maintain the confidentiality of its customer list, including the following.

The names and addresses of AFA customers were not readily obtainable from any public source. AFA catered to alumni and alumnae of certain United States universities that did not generally sell their alumni lists to outside businesses for commercial purposes. AFA's customer list, maintained in a computer file to which access is denied without a password, was compiled largely from responses to AFA advertisements in alumni magazines and from referrals by AFA tour participants. AFA was currently spending more than $100,000 per year in advertising and promotion and in all had spent more than $1,000,000 in developing the customer list. The most valuable names on the list were those of persons who had traveled on past AFA tours.

AFA disputed Whitchurch's contention that its customer list had been freely disseminated, stating that the names on that list were not disclosed except on a need-to-know basis. Thus, Whitchurch himself had not been given the whole list but only the names and addresses of the persons he was to escort. Lists of persons participating in a particular tour obviously had to be disclosed to providers of services such as hotels, but the disclosures were limited and were made with a notation of confidentiality. AFA also asserted that Whitchurch was fully aware of the confidential nature of that information and that as part of his duties he had delivered preregistration information to hotels, including an AFA cover letter stating that the information provided "is STRICTLY CONFIDENTIAL and is supplied to you only for the purpose of pre-registering the members of the tour."

AFA never sold or traded its list to others. Occasionally it received calls from persons considering a tour and requesting the names and addresses of former AFA tour participants; it refused to give out that information, informing the caller that the information was confidential. Even when a former AFA tour participant would call AFA to request the address or telephone number of a coparticipant, AFA's response was to relay the request to the coparticipant rather than giving the information to the caller. These practices were designed to prevent rival tours from gaining AFA confidential information by ruse.

At the oral argument of Whitchurch's motion, Whitchurch's attorney began by characterizing the motion as "turn[ing] on a very narrow issue" of whether the AFA information constituted trade secrets (Hearing Transcript, November 16, 1990 ("Tr."), at 1), and stating that the case was important to Whitchurch because "he may one day in the future wish to organize a tour, and write letters to individuals again" (*id.* at 2). The court, however, asked whether it even had to reach the question of trade secrets, raising sua sponte the question of whether the value of AFA's claims exceeded $50,000, a jurisdictional prerequisite for a diversity action. In response to the court's jurisdictional question, Whitchurch's attorney stated that Whitchurch, in soliciting for his planned tour, had written to 100–200 former AFA

tour participants but had received favorable responses from only two.

THE COURT: .... Why did you think your client was so unsuccessful in sparking interest in a tour under his direction?

MR. KRANTZ [counsel for Whitchurch]: I am sure one factor was that he was writing to people who had already been there, and so he was looking for only people who were interested in going twice. What other factors there were, I am really not certain....

Certainly any damages here are d[e]min[imi]s. I would absolutely agree with the Court.

THE COURT: Well, the Supreme Court has told us, as I read what it has said, that if there is a speculative question of fact but no reasonable possibility of damage, then summary judgement is appropriate....

(*Id.* at 5.)

AFA's attorney argued that Whitchurch's lack of success on his first effort was hardly dispositive of the issue of the amount of damages AFA might suffer, in light of Whitchurch's desire to conduct other tours in the future. In his letter to former AFA tour participants, for example, Whitchurch had offered the addressees their "first" opportunity to join his planned 28–day tour and said, "If you would like to be on my mailing list for future tours, please fill out and return the enclosed form. I will also be available to arrange special interest tours to the South Pacific." AFA's attorney, noting that over the years Whitchurch had escorted some 1,500 AFA clients on tours and had indicated that he would conduct a number of tours, argued that AFA's damages would be substantial. He stated that a single 10–customer tour to the area in question would easily generate more than $50,000:

THE COURT: How do you get up to fifty thousand dollars?

MR. DUBOW: ....

One tour of ten of your customers is a lot more than fifty thousand dollars. It's about seven to ten thousand dollars per customer on that one tour, and he's offering five or six different tours to areas

of the world. And he even said in his letter that he is going to solicit customers for trips to that area of the world and expand on that. So there is no doubt, he doesn't deny that.

(*Id.* at 15.) Dubow also stated that "one tour alone will produce more than fifty thousand dollars to Mr. Whitchurch...." (*Id.* at 19.)

At the close of this hearing, the court granted summary judgment in favor of Whitchurch, stating as follows:

THE COURT: I grant defendant's motion for summary judgment. There may be a theoretical question of fact here, but it is not the same type of material question of fact that precludes summary judgment.

We have lists here that were available to the defendant for the seventeen years, with respect to some of the older witnesses [*sic*], I suspect that the people traveled on those lists[, m]any of whom have reached retirement age at that time are probably no longer available for touring purposes.

The defendant's track record in soliciting is a pretty bad one. Two people signed up with him. I see there is no way any fact finder in this case will possibly reach a point where it will award damages to the plaintiff. I see no possible reason that the fifty thousand— no possible basis upon which the fifty thousand dollar number, which I think does apply here, could ever be reached. We're not dealing here with the plaintiff's massive lists. We're dealing with a circumscribed portion of those lists where the customers have already been tapped and have taken their tours.

I have [a] very serious question as to whether the lists involved here are trade secrets. It maybe [*sic*], as the plaintiff argues, that this is a question of fact that I should not be deciding. But, I'm taking to heart what the Supreme Court has said and that is a summary judgment is an effective way to eliminate from the Court the matters cluttering up our calendars.

I see this case is one where there is no reasonable possibility that any jury will

render a verdict for the plaintiff, and on that basis, I grant summary judgement. (*Id.* at 33–35.)

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, AFA contends that the dismissal for lack of jurisdiction was improper because the court (1) failed to give AFA an appropriate opportunity to show that it satisfied the jurisdictional amount, and (2) failed to apply the proper standard to AFA's requests for (a) damages and (b) injunctive relief. Whitchurch seeks to defend the judgment on the ground that the district court did not dismiss on the jurisdictional ground and that summary judgment on the merits was proper.

We reject Whitchurch's contention that the district court did not dismiss for lack of jurisdiction. Though the court styled its decision as one granting summary judgment and stated that it had a "very serious question" as to whether the AFA lists were trade secrets, it did not purport to resolve that question. Rather, it stated that it could see "no possible basis upon which the fifty thousand dollar number could ever be reached." The decision itself, therefore, especially in light of the colloquy that preceded it, indicates that the court dismissed because it had concluded that AFA could not satisfy the minimum jurisdictional amount.

For the reasons below, we conclude that the dismissal on the jurisdictional ground was improper. We also note that summary judgment dismissing AFA's trade secrets claims on the merits would have been improper.

### A. *The Jurisdictional Amount*

The district courts have jurisdiction over civil diversity suits "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs." 28 U.S.C. § 1332 (1988). The test for determining whether a plaintiff meets the jurisdictional amount, established by the Supreme Court in *St. Paul Mercury Indem-*

*nity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), is as follows:

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal.

303 U.S. at 288–89, 58 S.Ct. at 590 (emphasis added).

■■■ The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses, *see, e.g., Timely Products Corp. v. Arron*, 523 F.2d 288, 304 (2d Cir.1975); *see generally* 2 R. Milgrim, *Milgrim on Trade Secrets ("Milgrim")* § 7.08[3][a], at 7–314 to 7–318 (1990), or by the profits unjustly received by the defendant, *see id.; Electro–Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir.1985). In addition, if punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied. *See generally* 14A C. Wright & A. Miller, *Federal Practice and Procedure* § 3702, at 44 (1985) (*"Wright & Miller"*). New York law apparently allows the recovery of punitive damages in a trade secrets case if the defendant's conduct has been sufficiently "gross and wanton." *See, e.g., Huschle v. Battelle*, 33 A.D.2d 1017, 308 N.Y.S.2d 235 (1st Dep't 1970), *aff'd*, 31 N.Y.2d 767, 338 N.Y.S.2d 622, 290 N.E.2d 823 (1972).

■■■ Further, in appropriate circumstances, the owner of trade secrets may obtain an injunction against their use or disclosure by another in breach of his confidential relationship with the owner. *See Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir.1983). Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction. *See generally* 1 *Moore's Federal*

*Practice* ¶ 0.96[2] (2d ed. 1991); 14A *Wright & Miller* § 3708, at 143–44. In calculating that impairment, the court may look not only at past losses but also at potential harm. *See generally id.* at 146–49.

Before making a determination that the plaintiff's claim does not meet the jurisdictional minimum, the court must afford the plaintiff an "appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of [the jurisdictional amount] is reasonably possible." *Arnold v. Troccoli,* 344 F.2d 842, 846 (2d Cir.1965). Under these substantive and procedural principles, although the record indicates that AFA has not yet suffered actual damages even approaching $50,000, we have difficulty with the district court's decision.

■ First, though AFA did not make an evidentiary showing in support of its contention that the value of its claims exceeded $50,000, it was not afforded a proper opportunity to do so. The issue of the jurisdictional amount was first raised by the district court sua sponte at the argument on the summary judgment motion, and the court rendered its decision at the end of that argument. To the extent that the court thought AFA could not meet the jurisdictional minimum, it should not have dismissed without giving AFA an opportunity to present substantiation directed toward that issue.

■ Second, despite AFA's lack of an opportunity to present evidence addressed directly to the jurisdictional question, there was evidence in the record to suggest that the matter could not be conclusively resolved against it, for the oral arguments made by AFA's attorney to show that its claims were worth more than $50,000 had some support from documents already before the court. For example, he said Whitchurch had the names of some 1,500 AFA customers; this was consistent with (a) Whitchurch's own statement that in the 17 years he was employed by AFA he had led approximately seven tours each year (thus totaling some 119 tours) and (b) his attorney's statement that there were usually 10–15 people per tour. If there were no repeat customers among the persons Whitchurch escorted, he could have escorted some 1,785 AFA tour participants (119 × 15). As to AFA's attorney's estimate that a single tour of this type "[i]s about seven to ten thousand dollars per customer," the evidence in the record as to the destination and deluxe nature of the tours, including evidence that some participants traveled first class and reserved preferred hotel accommodations, supports an inference that a 28–day tour could well cost $10,000 per person.

What this means in terms of loss of earnings to a tour operator, however, is not revealed by the present record. AFA's suggestion that the tour operator himself would earn $10,000 per tourist (*i.e.,* that such a tour would "produce more than fifty thousand dollars *to Mr. Whitchurch* " (Tr. 19 (emphasis added))) does not have the same record support and seems questionable. The district court was also undoubtedly correct in its assumption that many of the persons who traveled to the South Pacific with Whitchurch during the 17 years he was with AFA are not likely to travel to that area again. But it could not be said to a legal certainty that no one would return to that area. There was ample support in the record for the proposition that AFA has the prospects for repeat customers. For example, AFA had submitted from one of its brochures two pages excerpting comments from participants in a recent AFA tour (the commenters being identified only by their initials and city of residence); nearly one-third of those quoted indicated that they either had been on other AFA tours or would hope to go on future AFA tours. Indeed, an exhibit submitted by Whitchurch stated that one of the couples in a group he was to escort had been on 11 AFA tours. And two of the 100–200 former AFA South Pacific tour participants contacted by Whitchurch signed up for Whitchurch's proposed tour to the same area. If a tour operator could earn 17% of the price of a tour, and if Whitchurch were eventually successful in soliciting even 30 of the approximately 1,500 AFA partici-

pants he has escorted (*i.e.,* 2%, which may reflect the ratio of his success on his first attempt), the profit he could siphon from AFA would total $51,000. Thus, on the present record, the court could not conclude to a legal certainty that the value of AFA's claims did not exceed the jurisdictional minimum.

Further, AFA requested injunctive relief not just against Whitchurch's solicitation of its customers but also against any use of the information. Presumably such an injunction would include a prohibition against Whitchurch's sale or disclosure of the names and addresses of AFA's customers to other tour operators who might be better equipped than Whitchurch to exploit the information and attract more than 2% of the persons whose names Whitchurch could provide them. In addition, AFA's request for punitive damages in the amount of $250,000 might provide a basis for satisfaction of the jurisdictional amount. Whether or not AFA will be able to prove that Whitchurch's conduct was "gross and wanton" and warrants the recovery of such damages under New York law is an open question. But the present record does not foreclose that possibility.

In all the circumstances, we conclude that the record as it existed in the district court did not permit the court to find with legal certainty that the value of AFA's claims did not exceed $50,000.

B. *The Merits of AFA's Trade Secrets Claims*

 Finally, even if Whitchurch were correct in his contention that the court dismissed AFA's trade secrets claims on the merits rather than for lack of jurisdiction, the dismissal could not stand. The question of whether or not a customer list is a trade secret is generally a question of fact. *See, e.g., Chevron U.S.A., Inc. v. Roxen Service, Inc.,* 813 F.2d 26, 29–30 (2d Cir. 1987); *Defiance Button Machine Co. v. C & C Metal Products Corp.,* 759 F.2d 1053, 1063 (2d Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *see also* 1 *Milgrim* § 2.03, at 2–47 to 2–49 (1990) ("existence of a trade secret is a

question of fact for the determination of the trier of fact, secrecy being a basic element"). The answer depends in part on the subsidiary fact questions of whether or not the owner took "reasonable measures to protect [the] secrecy" of the list, *see, e.g., id.* § 2.04, at 2–55; *Defiance Button Machine Co. v. C & C Metal Products Corp.,* 759 F.2d at 1063; and the ease or difficulty with which the information could properly be obtained from other sources, *see, e.g., id.; Restatement of Torts* § 757, comment *b* (1939). The mere fact that an employee has access to information the employer regards as confidential is not inconsistent with treatment of the information as a trade secret. The employer must, however, take appropriate precautions to alert the employee to the need to maintain the confidentiality. 1 *Milgrim* § 2.04, at 2–75 to 2–76.

 In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). As set forth in Part I above, in opposition to Whitchurch's motion for summary judgment, AFA submitted several affidavits describing both the efforts it had made to develop a customer list that was not available from any other source, and efforts it had made to prevent dissemination of the names on that list except to persons actually participating in the tours and persons who needed to know those names in order to service the AFA tours. Drawing all permissible fact inferences in favor of AFA, the court could not have concluded that as a matter of law the list was not confidential or was unworthy of protection. The record as it stands on this question is rife with genuine issues of fact.

CONCLUSION

We have considered all of Whitchurch's arguments in support of the district court's judgment and have found them to be with-

out merit. The judgment is vacated, and the matter is remanded for further proceedings not inconsistent with the foregoing.