Prosper **PARIENTE and Regis Ander, Plaintiffs,**

v.

**SCOTT MEREDITH LITERARY AGENCY, INC., Defendant.**

**No. 90 Civ. 0547 (PKL).**

United States District Court, S.D. New York.

Aug. 5, 1991.

Cordero, Glasgow & Barnes, New York City (Donna Glasgow, of counsel), for plaintiffs.

Rembar & Curtis, New York City (Frank R. Curtis, of counsel), for defendant.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action to enforce a foreign judgment. Plaintiffs have now moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment enforcing the foreign judgment. Defendant has cross-moved, pursuant to the same rule, to dismiss all or part of the complaint on several grounds. For the reasons stated below, plaintiffs' motion is granted in part, with judgment reserved in part pending submission of supplemental briefs. Defendant's cross-motion is granted in part, and denied in part.

## BACKGROUND

This action to enforce a French judgment against defendant Scott Meredith Literary Agency, Inc. ("SMLA") arises out of the 1984 sale by Clark Howard ("Howard") to

plaintiff Prosper Pariente ("Pariente") of an option for motion picture rights to Howard's novel *The Arm*.[1] Subsequent to this purchase, Pariente, plaintiff Regis Ander ("Ander"), and Patrice Valota ("Valota")[2] collaborated in writing a screenplay derived from the novel. It was later discovered that Howard had previously sold the motion picture rights to this novel to another buyer, and thus Pariente's purchase was void.

Litigation in France followed. The Court of Appeals of Paris, modifying a lower court judgment,[3] held SMLA, as Howard's literary agent, liable to Pariente and Ander for 412,000 and 212,000 French francs, respectively.[4] Plaintiffs were found liable to KUIV Productions ("KUIV"), a company with which they had contracted to produce their screenplay. Howard, but not SMLA, was required to indemnify plaintiffs for any amounts they were required to pay KUIV.

The cross-motions before this Court raise three issues. First, SMLA seeks an order dismissing plaintiffs' second and sixth causes of action, in which plaintiffs seek indemnification from SMLA of any amounts plaintiffs are required to pay KUIV. Second, SMLA seeks an order dismissing the fifth, seventh and eighth causes of action, which assert Ander's claims, on the ground this Court lacks subject matter jurisdiction over those claims. Third, the parties have cross-moved with respect to the issue of whether this Court should enforce the Judgment.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes

1. A more detailed discussion of the factual background of this action is presented in this Court's Order and Opinion dated February 11, 1991. Familiarity with that discussion will be assumed herein.

2. Valota is not a party to the instant action.

3. The lower court judgment, as modified by the decision of the Paris Court of Appeals, will be referred to herein as the "Judgment."

4. A translation of the decision of the Paris Court of Appeals is attached as Exhibit 2 to the Affidavit of Donna Glasgow, Esq., sworn to on April 24, 1991 ("Glasgow Aff." or "Glasgow Affidavit"). SMLA has not objected to the accuracy of this translation with respect to any language relevant to the instant cross-motions. Accordingly, the Court will accept this translation as accurate for the purpose of deciding these cross-motions.

demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *see also Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which " 'must set forth facts showing that there is a genuine issue for trial.' " *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson, supra,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)); *see also Carey v. Crescenzi and Harenzy Realty Corp.,* 923 F.2d 18, 21 (2d Cir.1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989) and *Knight v.*

*U.S. Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

### I. Plaintiffs' Claims for Indemnification by SMLA

The second and sixth causes of action in the complaint seek indemnification by SMLA for amounts the Judgment held Pariente and Ander liable to KUIV. Plaintiffs subsequently admitted that they are "not entitled to indemnification by SMLA for any part of the amounts awarded to KUIV Productions against plaintiffs." Plaintiffs' Response to Defendant's First Request for Admissions, attached as Exhibit 3 to the Glasgow Affidavit. Plaintiffs now concede that SMLA is entitled to summary judgment on the second and sixth causes in action, the requests for indemnification. Affidavit of Gelacio M. Cordero, Esq., sworn to on June 11, 1991 ("Cordero Aff."), ¶ 2 n. 3. Accordingly, SMLA's cross-motion for summary judgment on plaintiffs' second and sixth causes of action is granted.

### II. Subject Matter Jurisdiction Over Ander's Claims

The Court's subject matter jurisdiction over this action is based on the diversity of citizenship [5] of the parties.[6] As discussed above, the parties now concur that the most Ander is entitled to is 212,000 French francs. SMLA has submitted uncontroverted evidence that, from the date of the decision of the Paris Court of Appeals until the present time, this sum, as converted into United States currency, has never exceeded $50,000. Affidavit of Frank R. Curtis, Esq., sworn to on May 23, 1991 ("Curtis

---

**5.** The pertinent language of 28 U.S.C. § 1332 reads as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state; . . .

28 U.S.C. § 1332(a).

**6.** SMLA notes that the complaint, which asserts that plaintiffs reside in France, fails to identify

them as foreign citizens. Mere foreign residence is not equivalent to foreign citizenship for jurisdictional purposes, and is insufficient to establish diversity of citizenship. *See* 1 *Moore's Federal Practice* § 0.71 [5.–1] at 737–738 (1991) (citing cases). Declarations subsequently submitted by SMLA at the request of the Court establish Ander's French citizenship, Pariente's Israeli citizenship, and the French residence of both plaintiffs, and thus effectively refute this aspect of SMLA's jurisdictional challenge.

Aff."), ¶ 5.[7] SMLA has thus cross-moved for summary judgment on Ander's remaining claims, the fifth, seventh, and eighth causes of action in the complaint, on the ground of lack of subject matter jurisdiction. Such a motion may be made at any stage of the proceedings. Fed.R.Civ.P. 12(h)(3).

█ A plaintiff always bears the burden of showing that the district court has jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Ander makes two arguments in support of this Court's exercise of jurisdiction over his remaining claims. First, Ander cites New York Judiciary Law § 27(b) for the proposition that the value of a foreign judgment must be calculated at the time the judgment is entered.[8] From this, Ander argues that changes in the rate of exchange between the French franc and American dollar between now and entry of judgment could occur that would result in 212,000 French francs becoming worth in excess of $50,000.

█ Contrary to Ander's contention, however, New York Judiciary Law § 27(b)—which pertains to the calculation of foreign judgments, and not to the determination of questions of federal diversity jurisdiction—is not applicable to the issue at hand.[9] Although Ander correctly states that in a diversity suit a federal court applies the substantive law of the state in which it resides, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), he fails to recognize that "state law does not affect the federal definition of when a plaintiff may bring a diversity action in this court." *National Union Fire Insurance Company of Pittsburgh v. Barney Associates*, 130 F.R.D. 291, 294 (S.D.N.Y.1990). It is long settled that, with regard to the threshold question of jurisdiction, the value of the matter in controversy is determined at the action's commencement. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938); *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982); *Peoples Westchester Savings Bank v. Ganc*, 705 F.Supp. 164, 166 (S.D.N.Y.1989). Under Fed.R.Civ.P. 3, an action commences when the complaint is filed with the court. When Ander's remaining claims were filed they failed to meet the jurisdictional amount, and thus they do not, by themselves, support this Court's exercise of jurisdiction over them pursuant to 28 U.S.C. § 1332.

█ Ander's second argument is that his remaining claims should be aggregated with those of his co-plaintiff, Pariente, whose claims alone exceed $50,000. However, in a lawsuit involving multiple plaintiffs and a single defendant, each plaintiff's claims must individually satisfy the jurisdictional amount. *Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973). This rule "requires dismissal of those litigants whose claims do not satisfy the jurisdictional amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court." *Zahn, supra*, 414 U.S. at 295, 94 S.Ct. at 509.

The rule forbidding aggregation, which dates back as early as 1832, *Oliver v. Alexander*, 6 Pet. 143, 8 L.Ed. 349 (1832), has a single exception: a suit in which " 'several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest.' " *Zahn, supra*, 414 U.S. at 294, 94 S.Ct. at 508 (quoting *Troy*

7. As of May of this year, 212,000 French francs were equivalent to less than $37,000. Curtis Aff., ¶ 5.

8. In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation. Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.
New York Judiciary Law § 27(b).

9. As defendant observes, under Ander's theory any claim involving foreign currency brought in a federal court sitting in New York would meet the amount in controversy requirement of § 1332.

*Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 9–10, 56 L.Ed. 81 (1911)). In such an instance, " 'it is enough if their interests collectively equal the jurisdictional amount.' " *Zahn, supra*, 414 U.S. at 294, 94 S.Ct. at 508–09 (quoting *Troy Bank, supra*, 222 U.S. at 41, 32 S.Ct. at 9).

■ The facts of this case do not fall under the *Troy Bank* exception. Although Pariente and Ander have joined together to enforce a single judgment, underlying this action are two separate transactions: Pariente attempted to purchase the film rights to *The Arm;* Pariente, Ander and Valota collaborated in writing a screenplay derived therefrom. Moreover, the fact that the French court awarded Pariente and Ander different amounts—412,000 and 212,000 French francs, respectively—demonstrates that more than " 'a single title or right, in which [both plaintiffs] have a *common and undivided* interest' " is at issue. *Zahn, supra*, 414 U.S. at 294, 94 S.Ct. at 508 (quoting *Troy Bank, supra*, 222 U.S. at 40–41, 32 S.Ct. at 9) (emphasis added). "Aggregation of plaintiffs' claim cannot be made merely because the claims derived from a single instrument, or because the plaintiffs have a community of interest." *Thomson v. Gaskill*, 315 U.S. 442, 447, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). Where, as here, "[t]here is no contention by any party ... that the injuries claimed are not separate as to each plaintiff," *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 305 F.Supp. 803, 807 (S.D.N.Y.1969), aggregation of plaintiffs' claims is not appropriate.

The parties have, however, failed to address a third principle of law that theoretically could permit this Court to exercise subject matter jurisdiction over Ander's remaining claims. That rule has been stated by the Second Circuit as follows:

> Although diversity jurisdiction depends upon the amount in controversy exceeding [$50,000], jurisdiction is not lost because a plaintiff's ultimate recovery is less than that amount. The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits. Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.

*Zacharia, supra*, 684 F.2d at 202.

> Jurisdiction, once established, cannot be destroyed by a subsequent change in events. For example, "even if part of the claim is dismissed on a motion for summary judgment, thereby reducing plaintiff's claim below the requisite amount, the court retains jurisdiction to adjudicate the balance of the claim."

*Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir.1990) (Timbers, J., sitting by designation) (quoting Wright, Miller & Cooper, 14A *Federal Practice and Procedure* § 3702 (1985)). Rather, "[i]t must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991) (quoting *Red Cab, supra*, 303 U.S. at 289, 58 S.Ct. at 590) (emphasis in *A.F.A. Tours* ).

Because the "legal certainty test" is difficult to satisfy, and because the Second Circuit has indicated that "[b]efore making a determination that the plaintiff's claim does not meet the jurisdictional minimum the court must afford the plaintiff an 'appropriate and reasonable opportunity to show good faith' " in having believed that a recovery greater than $50,000 was possible, *A.F.A. Tours, supra*, 937 F.2d at 87–88 (quoting *Arnold v. Troccoli*, 344 F.2d 842, 846 (2d Cir.1965)), the Court will request supplemental briefing from the parties before deciding this issue.

### III. Enforcement of the French Judgment

Plaintiffs have moved for summary judgment seeking enforcement of the Judgment. SMLA has cross-moved for summary judgment, seeking dismissal of the complaint in this action and thus non-enforcement of the Judgment, on the ground that the Paris Court of Appeals based its decision holding SMLA liable on an industry custom for which SMLA asserts there was no evidence. In SMLA's view, the Judgment therefore violated American

standards of due process and is contrary to public policy, and thus should not be enforced.

### A. Comity Generally

"[T]he recognition of foreign judgments and proceedings is governed by principles of comity." *Victrix Steamship Company, S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.1987). *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), "the seminal case in the area of enforcement of foreign judgments," *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C.Cir. 1981), holds that if the foreign forum provides

> a full and fair trial ... before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of [a] party that the judgment was erroneous in law or in fact.

*Hilton, supra*, 159 U.S. at 202–03, 16 S.Ct. at 158.

This rule, "extend[ing] comity whenever the foreign court ha[s] proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy," *Victrix, supra*, 825 F.2d at 713, has consistently been followed in this Circuit. *See, e.g., Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986); *Cunard Steamship Company Ltd. v. Salen Reefer Services A.B.*, 773 F.2d 452 (2d Cir. 1985); *Clarkson Company, Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir.1976).

### B. New York Law

■ New York law governs actions brought in New York to enforce foreign judgments. *See In re Union Carbide Corporation Gas Plant Disaster at Bhopal*, 809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). Except in certain specified situations,[10] New York law provides that "a foreign-country judgment that is final, conclusive and enforceable where rendered must be recognized and will be enforced as 'conclusive between the parties to the extent that it grants or denies recovery of a sum of money'...." *Union Carbide, supra*, 809 F.2d at 204 (quoting CPLR § 5303). "A judgment of a court in a foreign nation is presumed valid if that judgment, or the pleadings, shows that the court had jurisdiction over the action and is a court of general jurisdiction." 54

---

**10.** New York has adopted the Uniform Foreign Judgments Recognition Act, codified at Article 53 of the New York Civil Practice Law and Rules ("CPLR"). CPLR § 5304, pertaining to the non-recognition of foreign country money judgments, provides as follows:

(a) No recognition. A foreign country judgment is not conclusive if:

1. the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

2. the foreign court did not have personal jurisdiction over the defendant.

(b) Other grounds for non-recognition. A foreign country judgment need not be recognized if:

1. the foreign court did not have jurisdiction over the subject matter;

2. the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

3. the judgment was obtained by fraud;

4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

5. the judgment conflicts with another final and conclusive judgment;

6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

N.Y.Jur.2d, Enforcement and Execution of Judgments § 60, at 90 (1986). As a leading commentator has noted, "[s]o liberal has New York case law been in the recognition of the judgments of foreign nations that the occasion for the use of Article 53 has been rare." Siegel, CPLR § 5301 Practice Commentary C5301:1, at 486 (McKinney's 1978).

### C. Enforcement of the French Judgment

In the case at bar, SMLA asserts two bases for non-enforcement of the Judgment: that the Judgment is incompatible with the requirements of due process, CPLR § 5304(a)(1), and that it is contrary to the public policy of New York. CPLR § 5304(b)(4). Both of these arguments arise from the French court's supposed reliance on a custom requiring literary agents to verify that their author-clients own the literary rights they are purporting to sell. In particular, SMLA complains that no evidence of such a custom was presented to the French court by plaintiffs, and that the Judgment thus violates due process and is repugnant to public policy.[11] As SMLA has offered no other objections to enforcement of the Judgment, and as the record indicates that the other prerequisites of comity and the New York statute are satisfied, this Court will limit its analysis to the issues of due process and public policy.[12]

#### 1. Due process

▇▇▇ "[I]n order for comity to be extended, the foreign court must abide by fundamental standards of procedural fairness." *Cunard, supra,* 773 F.2d at 457.[13] However, it is well established that mere divergence from American procedure does not render a foreign judgment unenforceable. "As Judge Cardozo so lucidly observed: 'We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.'" *Ackermann, supra,* 788 F.2d at 842 (quoting *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 110–11, 120 N.E. 198 (1918) (Cardozo, J.)). "Under New York law[,] ... foreign decrees and proceedings will be given respect ... even if the result under the foreign proceeding would be different than under American law." *Drexel Burnham Lambert Group Inc. v. Galadari,* 610 F.Supp. 114, 118 (S.D.N.Y.), *vacated in part on other grounds,* 777 F.2d 877 (2d Cir.1985); *see also Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970).

Differences in evidentiary standards have been treated similarly. In *Hilton,* the

**11.** SMLA initially argued that it was unaware of plaintiffs' argument before the Paris Court of Appeals regarding "custom," but necessarily retracted that assertion following the submission of a declaration by plaintiffs' French counsel demonstrating SMLA's awareness. *See* Declaration of Henri Choukroun, sworn to on June 11, 1991, ¶¶ 2–4.

**12.** In its Rule 3(g) statement, SMLA contests plaintiffs' claim in their Rule 3(g) statement that no appeal has been taken from the Judgment, noting that an appeal has been filed on behalf of SMLA but has been "temporarily withdrawn" from the docket of the French Cour de Cassation. Finality of the foreign judgment is a prerequisite to enforcement of such a judgment by this Court. CPLR § 5302. However, the Cour de Cassation removed SMLA's appeal from its docket, and will only permit reinstatement of the appeal after a decision by this Court. Thus, there is no proceeding pending in the French courts, and the Judgment is, for all practical purposes, final. Accordingly, SMLA withdrew a

motion for a stay of the instant action by letter to the Court dated June 25, 1990, choosing not to pursue a non-finality argument. SMLA has made no such argument in its instant cross-motion, and the Court will not create this argument for SMLA. Moreover, "a pending appeal or the possibility that an appeal may be taken does not affect the applicability of Article 53." 6 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 5302.02, at 53–11 (1990).

**13.** *Buchanan v. Rucker,* 9 East 192, 103 Eng. Rep. 546 (K.B.1808), provides a classic illustration of an instance where a foreign court failed to adhere to this standard. The Second Circuit summarized the facts of the case as follows: "[T]he plaintiff attempted to enforce in England a foreign judgment which was obtained after process was effected by having the summons nailed to the courthouse door on the Island of Tobago. The defendant had no notice of the summons and, indeed, had never set foot on the Island of Tobago." *Cunard, supra,* 773 F.2d at 457.

Supreme Court upheld enforcement of a French judgment, despite the fact that

> one of the plaintiffs was permitted to testify not under oath, and was not subjected to cross-examination by the opposite party, and ... the defendants were therefore deprived of the safeguards which are by our law considered essential to secure honesty and to detect fraud in a witness, and ... documents and papers were admitted in evidence, with which the defendants had no connection, and which would not be admissible under our own system of jurisprudence.

*Hilton, supra,* 159 U.S. at 204–05, 16 S.Ct. at 159. In so ruling, the *Hilton* Court stated:

> it having been shown by the plaintiffs, and hardly denied by the defendants, that the practice followed and the method of examining witnesses were according to the laws of France, we are not prepared to hold that the fact that the procedure in these respects differed from that of our own courts is of itself a sufficient ground for impeaching the foreign judgment.

*Hilton, supra,* 159 U.S. at 205, 16 S.Ct. at 159; *see also Tahan, supra,* 662 F.2d at 866 n. 18 (*"Hilton* ... stands for the proposition that American courts have been signally reluctant to deny recognition to foreign judgments by virtue of mere difference of procedure").

■ In the case at bar, SMLA argues that the discussion of "custom" that was presented to the Paris Court of Appeals in the form of "plaidoirie argument" and "conclusions d'appel" is not "evidence," and thus the Judgment, referring as it does to "custom," is incompatible with the requirements of due process. However, this is precisely the type of evidentiary question of which principles of comity and the provisions of CPLR §§ 5302–04 counsel against microscopic review by this Court. SMLA has presented no evidence that the Paris Court of Appeals afforded it anything less than a full opportunity to be heard,[14] that it

was the victim of any prejudice in either the French judicial or legal systems,[15] or that the Judgment was obtained by fraud. This Court will not sit as an appellate court in review of the judgment of a foreign court, where the procedures giving rise to that judgment did not violate due process.

### 2. Public policy

■ SMLA's second contention is that the Judgment should not be recognized because doing so would be contrary to public policy. "A judgment is unenforceable as against public policy to the extent that it is 'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.' " *Ackermann, supra,* 788 F.2d at 841 (quoting *Tahan, supra,* 662 F.2d at 864). "The standard is high and infrequently met." *Ackermann, supra,* 788 F.2d at 841. "Only in clear cut cases ought it avail defendant." *Tahan, supra,* 662 F.2d at 866 n. 17.

This argument is essentially nothing more than a restatement of SMLA's due process argument. As noted with respect to that argument, "[t]he courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks, supra,* 224 N.Y. at 111, 120 N.E. 198. For the same reasons the Court found SMLA's due process argument unpersuasive, it rejects that argument when dressed in the garb of a concern for public policy.

Moreover, although this Court will enforce the Judgment on the aforementioned grounds, another, more elementary reason for rejecting SMLA's arguments exists. Having carefully reviewed the text of the Judgment, the Court must reject SMLA's basic premise: that is, that the Paris Court

---

**14.** *See supra* note 11.

**15.** "The French judicial system, while different from our own, is neither less impartial nor less

interested in obtaining accurate testimony from witnesses." *United States v. Salim,* 855 F.2d 944, 952 (2d Cir.1988).

of Appeals necessarily based its holding upon the existence of a "custom."

Referring to SMLA, the Judgment reads: "[I]t behooved these professional intermediaries and they alone, as it is customary, to undertake the necessary verifications with the duly appointed literary agent of Clark HOWARD, if need be with the Copyright Office in Washington and with the Registry of the National Film Center which would have revealed to them the registrations going back a number of years...." Translation of Judgment, attached as Exhibit 2 to Glasgow Affidavit, at 18. The phrase "as is customary" is clearly a parenthetical clause. The French decree remains as clear and strong with these words deleted. SMLA was found liable because of its failure to exercise reasonable precaution in connection with its role in the sale of literary rights. The presence of mere *dictum* is far too thin a reed on which to hang an argument for non-enforcement of a foreign judgment, especially when that argument is premised on due process and public policy grounds. Accordingly, plaintiffs' motion for summary judgment on the first, third and fourth causes of action, enforcing the Judgment as to Pariente's claims,[16] is granted.

### IV. Interest on the Judgment

The complaint in this action demands interest on the Judgment at the rate of 9.5% per annum from November 13, 1987 through July 2, 1989, at the rate of 14.5% per annum from July 3, 1989 through September 6, 1989, and at the rate of 12.82% per annum from September 7, 1989 until the present. However, plaintiffs do not discuss this issue in their moving papers. SMLA argues, in a footnote, that to the extent the Judgment is enforced by this Court, the interest rate to be applied would be the New York statutory rate of 9% per annum. CPLR § 5004. Because this issue has been insufficiently briefed, as to both the relevant law and facts, the Court will not decide it now. Rather, should plaintiffs seek a judgment rate of interest in excess of the New York statutory rate, plaintiffs shall so inform SMLA and the Court, and the parties shall include a full discussion of this question in their supplemental briefs.

### CONCLUSION

The parties' cross-motions are granted in part, and denied in part, as follows. Plaintiffs' motion for summary judgment is granted with respect to the first, third and fourth causes of action. Defendant SMLA's cross-motion for summary judgment is granted with respect to the second and sixth causes of action, and is otherwise denied. The parties shall provide supplemental briefing on the issues of this Court's jurisdiction over Ander's remaining claims, and the proper judgment rate of interest to be applied in this case, according to the following schedule: plaintiffs shall serve and file their supplemental papers on or before August 23, 1991; SMLA shall serve and file its opposing papers on or before September 13, 1991; plaintiffs' reply papers, if any, shall be served and filed on or before September 20, 1991.

SO ORDERED.

---

**16.** There appears no reason to treat the claims of Pariente and Ander differently. Therefore, if—following supplemental briefing—the Court finds it has jurisdiction over Ander's claims, summary judgment enforcing the Judgment will be granted in his favor as well.